Good morning, Your Honors, and may it please the Court, Stanley Panikowsky on behalf of Nike. The District Court's preliminary injunction should be vacated. Counsel, one second. Do we have the other counsel, Mr. Anderson? Yes. Yes, Your Honor. We do. Mr. Anderson, I apologize. I just didn't see your… With my name, you expect that. Thank you, Your Honor. The District Court's preliminary injunction should be vacated because there is no evidence of irreparable harm and no likelihood of success on the merits. Either one is an independent ground for vacating the P.I. Fleet Feet was required to make a clear evidentiary showing of irreparable harm, but all it had was speculation about remote possibilities, no confusion, no immediate risk to its reputation, no immediate threat that customers, franchisees, or sales would be lost, nothing that satisfied this Court's actual and imminent standards for irreparable harm. The District Court itself made a factual finding uncontested on appeal that, quote, the lack of any indication of confusion, particularly given the broad reach of Nike's campaign thus far, calls its existence into question, end quote, at page 2017 of the joint appendix. This unusually strong factual finding is the key to unlocking the District Court's legal error on irreparable harm. This finding pointed decisively against irreparable harm. Over 18 million views of Nike's Sport Changes Everything campaign on YouTube, over four months in a seasonal ad campaign that would last merely seven months if not enjoined. In addition to other public interests— Mr. Panagoski, can I ask you about that? You talked about the timeline, and I'm interested, and we'll get to the merits, I guess, eventually. You've already started down that road, but I'm interested in the argument from your colleague on the other side that because Nike only intended to have this campaign last for a finite amount of time, and that time has come and gone, that essentially this preliminary injunction is moot, and really what you all should be fussing about in front of the District Court is whether, if in fact you are, interested in litigating the notion of a permanent injunction and or damages, but for our purposes, this preliminary injunction issue is not something that we need to rule on. Your Honor, the appeal is not moot for two independent reasons. First, the PI prohibits more speech than just the SCE campaign, and more speech than just the sport-changes-everything tagline. Okay, well, let me stop you there. So with respect to that, though, why isn't that an issue to be litigated on the question of whether or not a permanent injunction should be entered? Your Honor, the reason why it's not merely an issue that can be punted to further District Court proceedings is because the preliminary injunction itself is drawn more broadly to any use, with certain exceptions, that is confusingly similar to running short on time. I understand that, but by definition, it's a preliminary injunction, so doesn't something else need to happen? Either it's dissolved, either it's converted into a permanent injunction. There's a trial, but I just don't understand why we're litigating something that your own client has suggested, the focus of which was this campaign, which has ended. Your Honor, it is correct that both parties agree that the focus of the preliminary injunction litigation was the campaign that has ended, but there are two reasons why this live controversy spans more broadly. First, the fact that the preliminary injunction was not merely limited to the SCE campaign, and therefore, because it prohibits any use confusingly similar to running changes-everything or change-everything, Nike is still subject to this speech restriction, where if Nike were to have some other campaign that used the word change, likewise in a non-infringing and fair use way, that Fleet Feet might seek to use the current preliminary injunction to go forward on that. The other reason- I guess what I'm asking, Mr. Panowski, is are you suggesting that this preliminary injunction is going to remain in place forever? I mean, if we-doesn't this case contemplate some further proceedings? Yes, Your Honor. The preliminary injunction, one way or the other, will not be in place forever. However, it remains in place right now and is restricting Nike's speech right now and The other reason, Your Honor, even apart from that, why the appeal is not moved is because the preliminary injunction is secured with a $1 million bond. And the Supreme Court, in the Grupo de Mexicano case, made clear that in circumstances like these, the ability to recover on the preliminary injunction bond is something that by itself keeps the controversy alive and renders this appeal not moved. The Grupo de Mexicano case distinguished the case cited by Fleet Feet, University of Texas versus Caminiche, and limited it to circumstances where the PI no longer had any effect on the parties and the recovery on the injunction bond would merely duplicate an issue to be tried on the merits. Neither of those circumstances is present here, Your Honor. So even though the practical business import of the preliminary injunction dispute to the parties was Nike's Sport Changes Everything campaign and that's over, there is still a live controversy for those reasons. But counsel, we can't resolve that for you because the only thing here is appealing the grant of the preliminary injunction. If we, hypothetically, because we haven't decided anything, listening to your wise counsel, you and your good colleague, but if we determine that it is moved and we dissolve it, then you go back to the district court and still you could still, I mean, theoretically, your client could lose on the merits. And even though the preliminary injunction may have been ill-advised on the merits, so we can't resolve those things you're talking about. But as to the effect of the preliminary injunction, once we dissolve it, it's over, no matter how broad it is. For the moment, when you go back to determine the merits, which has not been determined, then you'll have to argue whether or not the fact was confusing and parallel markets and all of those things that you, wise counsel, know in terms of dealing with the trademark issues. So the two reasons you've given, I think they would be covered under mootness and dissolving the preliminary injunction. And then as to your bond, you go back there, you post it in the district court so that if you prevail on the merits, you say, look, I want I want my money. And that's the district court to determine that. Not us. Your Honor, it is true that if this court dissolves the preliminary injunction as the controversy would go away, if the court were to do that, it would be appropriate also to order the opinion accompanying the P.I. to be vacated because otherwise Nike would not have had an opportunity for appellate judicial review of that opinion. However, Your Honor, it is not clear that if the P.I. were dissolved solely on the basis of mootness, that Nike would then have an opportunity to recover partial reimbursement for the premature arrest of its Sport Changes Everything campaign. Because unlike in the University of Texas case, where the money that secured the preliminary injunction bond was the same amount of money that was at issue on the merits, the one million dollar P.I. bond that Fleet Feet posted is securing Nike against the injury that it already suffered from the premature termination of the SCE campaign. That amount is not directly in dispute on the merits. So it is not clear under Grupo de Mexicano and the University of Texas case that this court's dissolution of the P.I. for mootness would resolve the second reason why this controversy remains alive. Your Honor, but again, I'm sorry to beat a dead horse, but why isn't that question then left to the district court? Your Honor, is it the question of whether Nike can recover on the P.I. bond? Your Honor, back at the district court in this scenario, Nike would argue that it should recover on the P.I. bond. So is a ruling from this court that the P.I. was wrongfully entered, and that would be the basis on which Nike would be on the strongest footing to recover on the P.I. bond. Otherwise, the district court may be in a position of looking at what this court has done and saying that the P.I. was dissolved solely on the ground of mootness. Therefore, there hasn't been any determination that the P.I. was wrongfully entered. And the district court may, despite whatever arguments we may make at that stage, the district court may deny Nike recovery on the P.I. bond for that reason. But it can only be that if you lose on the merits. Right. If you lose on the merits, you shouldn't get it back. But if you do win on the merits, then the court would have no basis for not giving you relief on the posted bond. It all still hinges on what's left to be done by the district court, and that is the merits and the merits. The money follows the merits, not this preliminary injunction one way or the other for what for what our assignment is narrow. And we're saying we don't. And that's one thing about Article three. You know, we have to have jurisdiction and we don't make advisory opinions when there's no mattering controversy. You've said your only mission, the campaign is over, done with. So there's no need for no matter how meritorious the grant or the P.I. was or was not. There's no need to keep it in place now. Therefore, it is dissolved for the movements. Now you go back to the district court to resolve both one and two. I think one is resolved. But as the two point, I don't see how we could give you a judgment at this point that even if you won the injunction and then you get the money back now, maybe we could. But it seems that this is still a very viable question and give an answer that unless you have something further, I know you have more to say, but my dear colleagues want to ask you more. Your Honor, I would simply like to add setting aside the party's arguments about the propriety of such an order in light of the Supreme Court precedent, if this court were to issue a decision that dissolved the P.I. in its entirety and vacated the accompanying opinion and then specifically ruled and instructed the district court that Nike could recover on the P.I. bond if Nike were to prevail on the ultimate merits of the case. In that scenario, it does appear that the court would have addressed the two bases that we've asserted for a live controversy if the court were to make precisely that ruling. I don't think that that seems wrong to me on a couple of levels, right, because you could well lose on the merits and lose money and yet have been totally correct about the irreparable harm arguments that you're making because those are limited to the injunctive relief. You could lose on the merits at trial and be forced to pay fleet feet damages. And yet the injunction that was issued be entirely inappropriate. So I don't think at all that the relief that suggested would solve the problem that you've got and it would have the additional problem that where you have the voluntary cessation of an advertising campaign, right, which is what Nike did, right, injunction issues like they don't just stop doing it. They're ordered to stop doing it. Right. And that we have this entire doctrine of the voluntary cessation, which requires that it be absolutely clear that you're never going to use any of those things again, any of the trademarks in order for that to render it moot. I mean, it would be an odd world that you're acceding to the district court's order that you do something moots the very ability to appeal the district court's order that you not do it. I mean, that the whole premise here of mootness strikes me as as an odd one, because you're in a situation where you acceded to the district court's order and now are being told that because you've acceded to the order and stopped doing what you were doing, that you now can appeal the order that you acceded to. That's contrary to the voluntary cessation doctrine that we see laid out in the host of Supreme Court cases. Yes, Your Honor, we agree. And that is why Nike's position is that this appeal is not moot and there remains a live controversy. My response to the questions from your colleagues were premised on the scenario where the court decides to dissolve the P.I. based on mootness and outlining what conditions would need to be in that decision for that decision to possibly remedy the concerns that Nike has about having the P.I. and the opinion remain in place without the opportunity for immediate appellate review. So Nike's position, Your Honors, is that the case, the appeal is not moot. However, if it is ruled moot, then Nike needs to be made as whole as it possibly can, which would mean at a minimum dissolving the P.I., vacating the accompanying opinion and ensuring that some opportunity is preserved for Nike to recover on the one million dollar preliminary injunction bond at the appropriate time. And Your Honors, unless you had further questions on mootness or the merits which I had begun to address, I will reserve the rest of my time for rebuttal, please. All right. Thank you, counsel. Ms. Anderson. Thank you, Your Honor, may it please the court. This is Corby Anderson representing Fleet Feet Incorporated. I wanted to start with mootness and because it is the threshold issue. And our point is that Nike conceded it has no plan to use sport changes everything in the from this court, even if it won a victory on appeal. That would be a hollow victory because it chose to stop the sport changes everything campaign as of February. No, but it'd get a million dollars, right? I mean, that that's what the Supreme Court in the whatever it is, the Manahunt case says is that the injunction bond alone put other arguments have problems, too. But the injunction bond alone is sufficient to keep the controversy live. Why am I why is that wrong? Why am I missing that? The the injunction bond doesn't save this appeal from mootness because Nike can recover on the bond if it prevails in the trial court. And Kamenish has explained that in a case such as this, any issue preserved by an injunction bond can't be resolved on appeal and has to be resolved in a trial on the merits. Nike can't know if it will recover on the injunction bond until the propriety of its case, whether it wins the merits, because that's what determines recovery on the injunction bond. And Nike has by declaring that it is ceasing, that it is sport changes everything campaign and intends never to use it again and has no remedy here. Nike then is logically and under the law required to go back to the trial court where the case is currently stayed pending the resolution of this appeal. So the trial court is. But that's what Grupo Mexicano says doesn't doesn't work. Right. So tell me why Grupo Mexicano doesn't apply here, not the Kamenish argument. Well, there are two reasons, Your Honor. One is that the underlying case in Grupo Mexicano, the underlying issue about the bond was an issue of whether the trial court had the authority to enter the preliminary injunction. The issue in Grupo Mexicano had nothing to do with the merits. This was a case on where an injunction had been entered to preserve assets. And so the issue in that case, the ultimate merits issue is does is money owed. But the question that was challenged in the preliminary injunction was, did the trial court have the authority to enter the injunction? And the second thing is that irreparable harm, which was the issue in which was a question in Grupo Mexicano, would still have to be decided at trial. Nike has said the irreparable harm issue is another argument why this case is not moot. But that issue goes back to the trial court for determination. When if this case does if this court, excuse me, does what it did in Cincinnati, for example, and dismisses an appeal as moot and remands to the trial court, then Nike is free to ask the trial court to dissolve the injunction. And then the trial court can make a merits determination on whether Nike is entitled to recover on the bond. But the two questions are separate. The point of Grupo Mexicano, as I understood it, was that the questions can be separated. And let's just imagine hypothetically that you develop new evidence that shows irreparable harm that you did not present to the district court for a preliminary injunction. You might be able to use that new evidence to prevail in a permanent injunction, but it doesn't mean that the preliminary injunction was properly granted. And the injunctive bond, it seems, runs to whether the preliminary injunction was properly granted because it's what really caused harm to Nike stopping the ad campaign. A permanent injunction, right, which makes you may develop new evidence  But that's still fundamentally different from whether the preliminary injunction was properly issued and whether Nike is entitled to the appeal bond. Well, bond, I'm sorry, I don't mean appeal bond. I would direct the court to pages 314 and 315 of the Grupo Mexicano decision, because there the court explains that if the party who is in the position of Fleet Feet here prevails at trial, then even if it turned out that there wasn't adequate evidence of irreparable harm at the time, that would be harmless error because ultimately when the then that would mean there there was the irreparable harm preliminary finding didn't matter. So I think the Grupo Mexicano. That was true in Grupo Mexicano, but not true here because Nike only really cared about the five months that you shut down. Right. They don't care about 2023 right now. And what they cared about was the. Untold millions of dollars that they had spent on this ad that you stopped, right, not the future, right, what they cared about was the preliminary injunctive piece. I mean, that's the real harm to them. So that may have been true there, but it doesn't seem as true here. But Nike voluntarily ceased this conduct and has put its has, in effect, ensured that this appeal is moot. Voluntarily ceased after the district court ordered them to do so. That's not typically what we call voluntary cessation, right? Like we talk about voluntary cessation when they stop doing the running changes, everything that was voluntary. Right. But the rest of it, the sport changes. Everything is only after there's an injunctive order from a federal judge saying stop. That's not voluntary, is it? Well, there's no reason that Nike couldn't resume the campaign that that's their choice not to resume the campaign. They can't today without violating a federal order. Right. And that's why they need. That's why the trial court, rather than this court, should resolve that issue because they have chosen to stop the campaign. And that requires this case to go back to the trial court. And they have that remedy in the trial court. Is that true for any preliminary injunction? So if you comply with a preliminary injunction, then it necessarily moots the appeal on your theory because you're not doing what the district court ordered you not to do. That theory seems to swallow the rule. We would never have an appeal of a preliminary injunction unless somebody is under contempt of court for violating the federal order. Your Honor, after Nike has said it can have no meaningful remedy from this court, that seems like a concession that Nike needs to go back to the trial court for its remedy. And the trial court would it's there that the issue of whether the injunction should have been granted would be decided. Nike could try this case, prevail on the merits and and get the bond back, presumably. But a recover on the bond, I should have said. But by declaring that it had no meaningful remedy from this court, that deprives this court of subject matter jurisdiction. So it's not that Nike has no forum for resolving these disputes. It's that the proper forum is the trial court. Unless unless there are other questions on this, I'll go ahead to the merits. There are two issues that recur throughout this appeal. The clear error standard of review and reverse confusion and both call for affirming the trial court. The findings that Nike challenges on likelihood of confusion and fair use and irreparable harm are reviewed for clear error. And the trial court made those findings after considering more than a thousand pages of evidence, three hours of argument from counsel. It issued a carefully worded 51 page opinion and its findings in that opinion are correct. But they need only be plausible for this court to affirm them. The trial court's findings easily satisfy this standard. Now, the trial court correctly recognized this is a reverse confusion case and there's nothing novel about reverse confusion. All 10 federal circuits that have considered it have adopted it. Trial courts within this circuit have applied it. And the restatement of unfair competition has endorsed it. And the trial court recognized that this is this case has all the earmarks of reverse confusion and properly judged the case under the reverse confusion standards rather than forward confusion standards. Nike contends that the trial court's errors are that it applied these reverse confusion standards. In fact, what Nike wants is the application of forward confusion standards that don't fit this case. And the court should reject that argument. On likelihood of confusion, I'll touch on that just briefly. Three of the eight factors that the trial court considered Nike has assigned error to similarity of the marks, intent, and actual confusion. On similarity of the marks, the trial court used this court standard in Pizzeria Uno and it measures similarity by the distinctive portion of the mark. So in that case, Pizzeria Uno and Taco Uno were considered confusingly similar because the distinctive part, Uno, was identical. You can't just switch out taco for pizza for pizzeria. That doesn't make them dissimilar. Here, the trial court found that running changes everything and sport changes everything were confusingly similar for the same reason. You can't just sub out sport for running and make the marks dissimilar. And the common element of changes everything is the entire mark for fleet feets change everything. Nike, and this is one of those cases where the reverse confusion versus forward confusion standard comes into play. Nike argues that using its house marks, the word Nike in the swoosh negates similarity, but in reverse confusion cases, the vast majority of courts have held that it actually exacerbates confusion because it reinforces the association of both parties marks with the junior user. So the trial court correctly found that this factor weighs decidedly in favor of fleet feet. On the intent factor, Nike faulted the trial court for failing to identify one iota of evidence that Nike intended to confuse consumers. But intent to confuse is the forward confusion standard. For reverse confusion, courts look at whether the junior user knew about the senior user's mark. The trial court found that Nike did know when it adopted sport changes everything and it cited compelling evidence. And I'll just cite a few of the of the pieces of evidence that Nike and Fleet Feet had a long standing relationship as competitors and business partners and a Nike brand manager worked from Fleet Feet's headquarters in Carrboro and a mural of running changes everything covered the wall right outside his office door that appears at page 300 of the joint appendix. Nike faulted the trial court for making an inference that it ran a search for other uses of similar marks, which would have revealed Fleet Feet marks. It was reasonable to infer that a company as sophisticated as Nike, as experienced in trademark litigation as Nike would follow this standard practice before launching a multimillion dollar ad campaign. But if there were any room for doubt about that inference, Nike eliminated it when it argued in its fair use defense. And this is at page 32 of its initial brief that it selected sport changes everything in light of the widespread use of similar terms. How could Nike have known about this widespread use of similar terms without searching for running? Can you have that doesn't seem right. Can you well have a term that's in common everyday usage? Right. Take, for example, sealed with a kiss. Right. Which we see coming up in a variety of context. I got daughters, right? SWIK like shows up all over my house. But I've done no trademark searches to know whether it's trademarked or not. Nike's just saying something changes. Everything is a common vernacular term, not a term. Right. Those seem to me totally different ideas. It would be the standard practice to run a trademark search and then winnow that search down to the uses that are in your same field, because those are the ones that matter. If you use your point was your point was a different one. Your point is they conceded that they did something because they said something changes. Everything is common vernacular. But I agree with them on that. But I don't see how that goes to whether they did a trademark search or not. Like, I think it's a common term, but that doesn't mean that I did any trademark searches. I'm not sure I'm following the logic of what you're saying, what I'm trying to get at. Your Honor, I my point is that to say you acted in good faith because of the widespread use of similar terms, that there's certainly an implication there to me, an inescapable implication that you searched to see to determine that. You can have a hunch about something, but would you want would you spend would you bet 16 million dollars on it if you hadn't? Wouldn't you want to be more definitive than that? Why wouldn't the inverse, Ms. Anderson, the inverse of that be equally damning, that is, that a company as sophisticated as Nike that fails to conduct a search, you know, necessarily needs to accept the consequences of that failure? Well, it certainly should accept the consequences of that failure. And I mean, the argument could be, well, it just doesn't want to know it's going to go forward and do what it wants to do and blind itself to the reality that there might there might be a possible trademark issue and we're just not going to look, we're not going to be it is problematic. And it goes back to the the intent factor, which also the intent factor has is whether a company knew or recklessly disregarded. And if the rule were that you could just recklessly disregard, you know, marks that are there, you should pay, you should pay a toll for that. I mean, that would be a terrible rule is what I'm saying. Can I ask you a question about this issue of actual confusion? I understood from the record that there were apparently a number of views of this campaign, I believe 18 million or so. And there's no evidence in the record that I can see that there was any actual confusion. So isn't that I mean, doesn't that sort of cut against the finding of a likelihood of confusion? Your Honor, it does not. It has to be if first of all, the trial court ruled that this factor favored Nike in its likelihood of confusion. And there's a good reason for that. It is that like evidence of actual confusion is incredibly hard to find. And it's judged over the length of time that it's been out there. So this campaign has been out there for only a few months. No discovery. It's completely unremarkable that the confusion wouldn't have surfaced by this time. And that's why courts don't require actual confusion. And to do so would mean that you would have to be harmed. There'd be concrete evidence of your harm before you even seek relief for it, can seek relief for it. I see that I am past my time. I'd like to, if the court would indulge me, just point out a few pages in the joint appendix that I'd like the court to look at. It's a 2000 plus page appendix. And these pages were, I think, illustrate the use of sport changes. Everything is a mark, which is a critical issue. May I just cite these pages to the court? Thank you. They are 1465 and 1460. Showing how sport changes, everything is used as an attention getting symbol and as Nike use, just do it. Then 165 and 1668 showing the use of the mark in product displays in stores in exactly the same way that Fleet Feet uses running changes everything. 1455, 1468 and 318 showing use on social media. And finally, 333, which shows Nike sponsored athletes using running changes, everything Fleet Feet's exact mark to invite consumers to visit them at Nike's online store. And to give a full picture, when Fleet Feet complained of that, Nike changed running to sport. But that just shows how similar these marks actually are. Thank you for letting me cite those pages. Thank you, Ms. Hampson. Certainly. Mr. Polakowski, you have some time reserved. Thank you, Your Honor. Your Honors, the district court's irreparable harm and reverse confusion rulings fall apart when viewed through the prism of the particular theory of reverse confusion that the district court incorrectly embraced here. This wasn't the more typical type of reverse confusion case where one might encounter Nike's marks and then Fleet Feet's products and think that Fleet Feet's products come from Nike. Rather, it was something very different. What the district court said at page 2014 of the joint appendix is that consumers would encounter Nike's sport changes everything campaign and then reasonably carry those ideas with them into a Fleet Feet store, where upon seeing change everything and running changes everything, the district court said consumers may assume that or wonder if Nike owns or controls Fleet Feet. Your Honors, that is not a reasonable assumption and certainly not one that can support the preliminary injunction here. What the district court is supposing is that someone, because they saw the Nike sport changes everything campaign, would then walk into a Fleet Feet store, see all of these different brands, some of Nike's fiercest competitors in the running space, see Under Asics and more of the 25 brand partners that Fleet Feet itself lists on its website at pages 194 and 195 of the joint appendix. And the district court speculated that that consumer would walk into that store or visit Fleet Feet's website and see all of these different competitive brands and think to themselves, oh, my gosh, did Nike acquire Fleet Feet? That is not a reasonable assumption, Your Honor. Yet that was the entire basis for the district court's reverse confusion ruling and its irreparable harm ruling and is one of the reasons why those rulings should be vacated. The remaining time in the campaign is also very significant here. By the time of the preliminary injunction hearing, the campaign had been underway for four months and there were three months left. The district court itself found that Nike's use of the sport changes everything advertising slogan was widespread and that because of that and because of Nike's pervasive presence online and in social media, the lack of any indication of confusion calls its existence into question. So the district court was basically saying, even though this may only be four months, those four months are like dog years here, given the extent of Nike's use. And then you compare that to the fact that only three months remained in the campaign at that time. And this court's decision in directs Israel requires that before a PI is entered, something that this court called an extraordinary and far reaching remedy that should only be issued in limited circumstances where it's clearly appropriate. That harm cannot merely be remote and speculative. It has to be actual and imminent. As the court said in directs Israel, there has to be some immediate harm that would occur absent entry of a PI. If in the first four months of the campaign, with a commercial at the Major League Baseball All-Star Game on TV, a commercial at the ESPY Awards on national TV, over 18 million YouTube views, as the district court itself found, other extensive uses online and on large public billboards. If those four months had not produced any indication of confusion, we're using the district court's own findings here. That's why we're not concerned if this court applies the clear error standard, because many of the district court's factual findings favor Nike. The district court just drew the wrong legal inferences from those findings. If that were the case over the first four months of the campaign and then Fleet Feet couldn't produce a single consumer, a single franchisee, a single employee, a single anyone who was confused and also could not produce a declaration from any one of its 153 franchisees or based on consumers coming to the doors of any of its 182 stores total or seeing Fleet Feet online and amidst that entire sea of potential evidence and exposure to Nike's campaign, the fact that Fleet Feet was unable to produce any evidence of actual and imminent irreparable harm absent a preliminary injunction by itself renders the district court's irreparable harm ruling legally erroneous. And your honors, I see my time has expired. May I please address two more points briefly from this court's case law? Ms. Pentecost, may I just ask you a quick question? Yes, your honor. If we rule, if we agree with you and rule with you on all of those aspects of the injunction, hypothetically, we did, are you, are you saying that would be preclusive if when the case goes back on the merits that Fleet couldn't come back with a full record on the merits and prove those, those elements would be dispositive of that? Your honor, whether it's dispositive would depend on the precise scope of this court's decision and mandate in the appeal. But in general, the fact that a party was unable to secure a PI at a particular time does, does not necessarily mean that it won't be able to show that it's met the elements for a PI at a later point in time. Exactly right. So it goes back either way on the merits. Your honor, that that is correct. Yet by reversing the decision here and vacating the PI, the district court also will receive important guidance for the merits and two important points in this court's case law that the district court did not follow are one from the care first decision of this court at page 267. The, this court said, although proof of actual confusion is not necessary to show a substantial period of time creates a strong inference that there is no likelihood of confusion and four months of an extensive campaign relative to the seven month seasonal duration is in these circumstances, a substantial period of time. Also, this court in Georgian company at page 398 said that the failure to conduct a trademark search or contact counsel, something that the district court inferred here based on that shows carelessness at most, but is in any event irrelevant because knowledge of another's goods is not the same as an intent to mislead and cause consumer confusion. The intent required for both forward and reverse confusion has to be the intent to confuse consumers because that is the only harm against which the Lanham Act protects. The Lanham Act does not create two different sets of standards for forward and reverse confusion, and therefore the same standards of this court applies in a forward confusion case should also apply to the reverse confusion. Otherwise it would transform reverse confusion into a mutant species of trademark law where weak marks will be giving special protection and preferential rules precisely because they are weak. This your honors return trademark law on its head. Therefore, your honors, the court should rule that the district court erred either as a matter of law or in clearly erroneous, ultimate findings of fact vacate the preliminary injunction and remand the case to proceed on the merits. Thank you, your honors. Thank you, counsel. Thank you both for your arguments. Please know that we appreciate your arguments, even though we don't shake your hand. But thank you so much. And this and many other cases of difficult and good lawyers like yourselves coming here to help us on these are very much appreciated. We wish you well. Be safe and stay well. And we'll ask the clerk of the court to adjourn for today. Thank you. Dishonorable court stands adjourned until tomorrow. God save the United States and this honorable court.
judges: Roger L. Gregory, Albert Diaz, Julius N. Richardson